**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SHAMINE KAYMAN, Individually, and as Parent
and Natural Guardian of Minor T.W.,

            Plaintiff,

      -v-                                 5:25-CV-108 (AJB/MJK)

SPIRIT HALLOWEEN SUPERSTORES LLC,
ALYSAH PEREZ, SHADIA PRUNNER, and
DOES 1-10,

            Defendants.

**Hon. Anthony Brindisi, U.S. District Judge:**

**DECISION and ORDER**

## I.     INTRODUCTION

On January 23, 2025, plaintiff Shamine Kayman ("Kayman") filed this civil rights action on behalf of herself and her minor daughter, T.W., alleging race and disability discrimination in violation of 42 U.S.C. § 1981, Title III of the Americans with Disabilities Act ("ADA"), and the New York State Human Rights Law ("NYSHRL"). Dkt. No. 1. Broadly stated, Kayman alleges that defendants Spirit Halloween Superstores LLC ("Spirit Halloween"), along with employees Shadia Prunner ("Prunner"), Alysah Perez ("Perez"), and Does 1-10 (collectively the "Employee defendants") discriminated against her and T.W. on the basis of their race and against T.W. on the basis of her disability. *See generally* Dkt. No. 1.

On March 24, 2025, Spirit Halloween and the Employee defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 9. The

motion has been fully briefed, Dkt. Nos. 12, 13, and will be considered on the basis of the submissions without oral argument.

## II.     BACKGROUND

The following facts are taken from the complaint and will be assumed true for the purpose of assessing the motion to dismiss.

Kayman and her daughter, minor plaintiff T.W., are New York residents.  Dkt. No. 1, ("Compl.") ¶¶ 11–12.[1]  The two are African American.  *Id*.  T.W. is around four years old and has been diagnosed with autism spectrum disorder.  Compl. ¶ 22.

On October 13, 2022, Kayman, her sister Shanyce Hodges ("Hodges"), who is also African American, and T.W. went to a Spirit Halloween in Mattydale, New York, to purchase Halloween decorations.  Compl. ¶¶ 21–23.  T.W. was non-verbal at the time, so she wore a bright orange vest that read "AUTISTIC be kind."  *Id*. ¶ 22.  T.W. also carried a toy taco as a comfort aid.  *Id.*  ¶ 22.

Upon entry, Kayman and Hodges noticed that they were the only African American customers.  Compl. ¶ 23.  They also noticed the Employee defendants surveilling the three of them, but particularly T.W., as she perused the store.  *Id.* ¶ 23.  "On account of T.W.'s autism," she was "hypnotically drawn in" by the store's Halloween lights and haunted house displays.  *Id.* ¶ 24.

Meanwhile, Kayman and Hodges, increasingly discomforted by the Employee defendants' apparent profiling, decided to stop shopping and leave the store.  Compl. ¶ 24. T.W., who was overstimulated by the Halloween decorations, refused to leave.  *Id.* ¶ 24.

---

[1] The complaint is sequentially numbered by paragraph. Accordingly, citations to the pleading correspond with that document's internal pagination.

Because Kayman was seven months pregnant at the time, Hodges picked up T.W., then kicking and screaming, and attempted to remove her from the store.  *Id.* ¶ 25.  T.W. still carried her toy taco as she was brought towards the exit.  *Id.* ¶ 27.

Before they reached the doors, Kayman called out the Employee defendants' unrelenting and discriminatory surveillance.  Compl.  ¶ 26.  The Employee defendants approached the three, stood over T.W., and sternly accused her of stealing merchandise from the store—her toy taco. *Id.* ¶ 26.  Kayman called attention to T.W.'s bright orange vest, which indicated that she has autism, and informed the Employee defendants that T.W. brought the toy taco into the store as a comfort aid.  *Id.* ¶ 27.  The Employee defendants maintained their accusations, insisting that surveillance cameras captured footage of T.W. removing the toy from its packaging.  *Id.* ¶ 28.

Frustrated, Kayman, Hodges, and T.W. walked out and got into their vehicle.  Compl. ¶ 29.  The Employee defendants followed the three women into the parking lot and continued to falsely accuse T.W. of shoplifting.  *Id.* ¶ 29.  Kayman exited her vehicle to confront the Employee defendants and demanded to speak to a store manager.  *Id.* ¶ 29.

Prunner, the store manager, came out to the parking lot and affirmed the Employee defendants' accusations that T.W. had stolen the toy taco.  Compl. ¶ 30.  While Kayman defended T.W., the Employee defendants re-entered the store and contacted law enforcement. *Id.* ¶ 33.

When police responded to the scene, the Employee defendants informed them of the alleged shoplifting incident and accused Kayman of summoning a "mob of African Americans" to the store to intimidate the Employee defendants after the incident.  Compl. ¶ 33.  Kayman called her mother as she waited in the parking lot for police to review the surveillance footage. *Id.* ¶ 36.  Kayman's mother soon arrived at the store and confronted the Employee defendants.

*Id.* ¶ 36.  The Employee defendants falsely told police that Kayman's mother had threatened them, prompting police to order her to exit the store and stay off the premises.  *Id.* ¶ 36.

The Employee defendants never apologized for their misconduct, even after "it was determined that . . . [Kayman and T.W.] were being wrongfully accused."  Compl. ¶ 34.  Instead, the Employee defendants laughed and cursed at Kayman, Hodges, and T.W.  *Id.* ¶ 35.

## III.    LEGAL STANDARDS

Defendants move to dismiss under Rule 12(b)(1) and 12(b)(6).  Dkt. No. 9-1 ("Defs.' Mem.") at 6.[2]  The standards of review under these two provisions are "substantively identical." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *abrogated on other grounds by Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 94 n.5 (2d Cir. 2019).  Even so, courts usually address 12(b)(1) arguments first: jurisdictional challenges go to the ability to entertain a dispute, so they should be resolved before reaching any merits-based questions, such as plausibility.  *See, e.g.*, *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019).

### A.    Fed. R. Civ. P. 12(b)(1)

The Federal Rules of Civil Procedure permit a party to move to dismiss a complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving subject-matter jurisdiction.  *Id.*

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true[ ] and draw all reasonable inferences in favor of

---

[2] Pagination to the briefing corresponds to the electronically generated CM/ECF headers.

the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

### B. Fed. R. Civ. P. 12(b)(6)

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) ("[T]he '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (quoting *Twombly*, 550 U.S. at 555).

In assessing facial plausibility, the Court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in the plaintiff's favor, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the Court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which it may take judicial notice. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

### IV. DISCUSSION

Plaintiff's 4-count complaint asserts: (1) a 42 U.S.C. § 1981 racial discrimination claim against all defendants on behalf of plaintiff and her daughter, T.W.; (2) a Title III ADA disability discrimination claim against Spirit Halloween on behalf of T.W.; (3) an "intersectionality claim" based on racial and disability discrimination against all defendants on behalf of T.W.; and (4) a

New York State Human Rights Law discrimination claim against all defendants on behalf of plaintiff and T.W.  Compl. ¶¶ 37-72.

In support of their motion to dismiss, defendants argue that (1) plaintiff has not plausibly alleged defendants' intent to discriminate or that plaintiff was engaged in a protected activity, as is required to state a racial discrimination claim under 42 U.S.C. § 1981; (2) plaintiff does not have standing to sue under the ADA; (3) even if plaintiff has standing under the ADA, plaintiff has not plausibly alleged that T.W. was discriminated against on the basis of her disability; and (4) plaintiff cannot maintain an intersectionality claim where the underlying discrimination claims fail.  Defs.' Mem. at 10–17.  Defendants also ask that the Court decline to exercise supplemental jurisdiction over plaintiff's remaining state law claims.  Defs.' Mem. at 17.

In opposition, plaintiff argues that she (1) pleaded sufficient facts to demonstrate standing; (2) stated a plausible racial discrimination claim under 42 U.S.C. § 1981; (3) plausibly alleged that defendants intentionally discriminated against T.W., in violation of Title III of the ADA; and (4) set forth sufficient factual allegations to state a claim under New York Executive Law § 296(2).  Dkt. No. 12 ("Pl.'s Opp.") at 7.

## A. 42 U.S.C. § 1981: RACIAL HARASSMENT & DISCRIMINATION

First, the Court addresses Count I of the complaint, which alleges that defendants racially profiled plaintiff and T.W. while they were shopping at Spirit Halloween, in violation of 42 U.S.C. § 1981.  Compl. ¶¶ 37-46.

Plaintiff asserts this claim against all defendants.  Compl. at p. 9.  *See Harvey v. NYRAC, Inc.*, 813 F. Supp. 206, 209 (E.D.N.Y. 1993) ("Section 1981 'covers racially, discriminatory acts of private individuals and corporations because there is no 'state action' requirement.'") (citing

*Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir.1988) (citing *Runyon v. McCrary*, 427 U.S. 160, 168–75 (1976)).

Defendants argue that plaintiff's discrimination claim fails because (1) plaintiff has not plausibly alleged that defendants intentionally discriminated against T.W. and herself; and, in any event, (2) defendants did not prevent plaintiff from making a purchase, as plaintiff voluntarily left the store. Defs.' Mem. at 14–16.

Section 1981 "provides that '[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.' Subsection (b) of § 1981 defines 'make and enforce contracts' to include 'the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 101 (2d Cir. 2001) (quoting 42 U.S.C. § 1981).

To state a claim for racial discrimination under § 1981, "a plaintiff must set forth facts to demonstrate '(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute.'" *Kosher Ski Tours Inc. v. Okemo Ltd. Liab. Co.*, 2023 WL 8720273, at *7 (S.D.N.Y. Dec. 18, 2023) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)).

Though defendants have not addressed the first prong, *see generally,* Def.'s Mem., the Court finds that plaintiff has sufficiently alleged that she and T.W. are both members of a "racial minority." Compl. ¶¶ 11–12 ("Plaintiff Shamine Kayman, is an African American female . . . Plaintiff T.W., is an African American minor female . . . . ").

Next, the Court turns to whether plaintiff has plausibly alleged that defendants had an "intent to discriminate" and that the alleged discrimination concerned a "protected activity."

### 1. Intent to discriminate

Defendants argue that, "[w]ith respect to the second prong, [p]laintiffs' allegations that [d]efendants acted with the intent to discriminate against them because of their race are entirely speculative and conclusory." Defs.' Mem. at 14. Plaintiff disagrees, insisting that her complaint plausibly alleges an inference of discriminatory intent. Pl.'s Opp. at 35.

"A claim of discrimination under Section 1981 requires a showing of intentional discrimination." *Lyons v. Citi Trends, Inc.*, 2023 WL 1821042, at *2 (S.D.N.Y. Feb. 8, 2023) (citing *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982)). "Plaintiffs may rely on either direct or circumstantial evidence to show purposeful discrimination." *Henry v. Lucky Strike Ent., LLC*, 2013 WL 4710488, at *8 (E.D.N.Y. Sept. 1, 2013) (quoting *Shen v. A & P Food Stores,* No. 93 CV 1184, 1995 WL 728416, at *3 (E.D.N.Y. Nov. 21, 1995)).

"However, in pleading intentional racial discrimination, a plaintiff may not rely on 'naked assertions' of discrimination, but rather 'must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent.'" *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp. 2d 385, 391 (S.D.N.Y. 2006) (quoting *Yusuf v. Vassar Coll.,* 35 F.3d 709, 713–14 (2d Cir. 1994)), *aff'd sub nom. Bishop v. Toys R Us*, 385 F. App'x 38 (2d Cir. 2010) (summary order).

"[T]o state a claim for a violation of section 1981, something more than *mere surveillance* of a customer . . . is required." *Pierre v. JC Penney Co.*, 2006 WL 407553, at *5 (E.D.N.Y. Feb. 21, 2006) (emphasis added); *see Garrett v. Tandy Corp.*, 295 F.3d 94, 101 (1st Cir. 2002) ("In a society in which shoplifting and vandalism are rife, merchants have a legitimate interest in observing customers' movements. So long as watchfulness neither crosses the line

into harassment nor impairs a shopper's ability to make and complete purchases, it is not actionable under section 1981.").

Here, the allegations in the complaint,[3] accepted as true, amount to no more than "mere surveillance." Compl. ¶¶ 23-24 ("Defendant employees expressly assumed a concentrated surveillance and monitoring of Plaintiff Kayman, her sister and the four-year-old T.W . . . . T.W.'s mom and auntie were extremely unnerved by Defendant's employees brazen and unprovoked profiling that they decided to immediately discontinue their shopping and leave the store.").

Plaintiff's subjective perception that she and Hodges "noticed they were the only African American customers present in the store," absent more non-conclusory supporting allegations, cannot be imputed to defendants. But even if it were, this observation alone could not support a plausible inference of discrimination where, as here, the complaint is devoid of non-conclusory factual allegations tending to show that one or more of the Employee defendants harbored racial animus.

Moreover, "a complaint that identifies other possible motives, combined with a lack of specific factual support of racial animus, contradicts a claim of racial discrimination." *Hicks v. IBM*, 44 F. Supp. 2d 593, 598 (S.D.N.Y. 1999) (citing *Yusuf*, 35 F.3d at 714).

---

[3] In her opposition papers, plaintiff cites to a number of allegations, some of which have been completely rephrased, and others that appear for the first time in Kayman's affidavit, which was submitted as an exhibit to her opposition papers. *See* Pl.'s Opp. at 25; Dkt. No. 12-1 ("Kayman Aff."). However, "parties may not amend the pleadings through motion papers." *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018); *see also Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000) ("A district court errs when it 'consider[s] affidavits and exhibits submitted by' defendants or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.") (internal citations omitted); *see also Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 483 (N.D.N.Y. 2019) ("While district courts in the Second Circuit may consider . . . belated attachments when deciding a motion to dismiss for failure to state a claim if the plaintiff is proceeding *pro se*, here Plaintiff is not proceeding *pro se*.").

The complaint alleges that T.W. was holding a toy—albeit her own toy—while in the store.  Compl. ¶¶ 22–24.  At some point, "T.W.'s mom and auntie . . . decided to immediately discontinue their shopping and leave the store."  *Id.* ¶ 24.  Then, T.W. "refused her mom's directive to leave the store," and was ultimately carried out of the store by her aunt "scream[ing] at the top of her lungs[,] kicking[,] and causing a large disturbance."  *Id.* ¶¶ 24–25.  As T.W. was physically removed from the store, the Employee defendants "announced that 'the little girl took something from out of the store.'"  *Id.* ¶ 26.

These allegations identify at least two plausible, nondiscriminatory motives.  Collectively and taken as true, they establish that defendants saw Kayman exit the store without making a purchase and then observed Hodges carry T.W., who was screaming and holding a toy, out of the store.  If anything, these allegations plausibly suggest that T.W. *appeared* to shoplift, as there are no allegations that any defendant saw T.W. enter the store with the toy.  *See generally* Compl. These allegations also support the reasonable inference that the Employee defendants may have been watching T.W. because she was causing a disturbance.

On the whole, plaintiff has not plausibly alleged that defendants possessed any intent to discriminate, as is required to state a racial discrimination claim pursuant to 42 U.S.C. § 1981.

### 2.  Protected activity

Even if plaintiff plausibly alleged the requisite discriminatory intent, defendants insist that her § 1981 claim nonetheless fails because nothing suggests that plaintiff attempted to make a purchase or that defendants had prevented her from doing so.  Defs.' Mem. at 15–16.

With respect to the third prong, "[t]he scope of protection under § 1981 includes all contractual rights throughout the course of formation, performance and termination of a contract."  *Anacacy v. Panera, LLC*, 2021 WL 2431010, at *3 (E.D.N.Y. June 9, 2021).

Accordingly, in *Pierre v. J.C. Penney Co., Inc.*, the court denied plaintiffs motion to amend their complaint where:

> [t]he proposed plaintiffs d[id] not allege that they even attempted to make a purchase, much less that they were actually denied the opportunity to make a purchase by the defendant. Indeed, except for being watched by JC Penney personnel, they allege no conduct by JC Penney that prevented them from entering into a contract of purchase. Rather, it was simply their awareness that they were being watched that led them to leave the defendant's premises without even deciding whether to make a purchase.

2006 WL 407553, at *5.

Identically, here, the complaint lacks any allegation that Kayman attempted to make a purchase. *See, generally,* Compl. Instead, Kayman admits that she chose to leave the store voluntarily without purchasing anything because she and Hodges were "unnerved by . . . [the] employees [*sic*] brazen and unprovoked profiling." Compl. ¶ 24. The remainder of plaintiff's allegations concern conduct and statements of the Employee defendants after plaintiff voluntarily left the store. *Id.* ¶¶ 30-36. These allegations fall short.

Because plaintiff has not sufficiently alleged that defendants intended to discriminate or that she was precluded from making a purchase on account of such discrimination, her racial discrimination claim fails.

Count I is dismissed.

## B. 42 U.S.C. § 12182 & 28 C.F.R § 36.102: DISABILITY DISCRIMINATION

Next, the Court turns to Count II of the complaint, which alleges that Spirit Halloween, through the actions of the Employee defendants, discriminated against T.W. on the basis of her disability in violation of Title III of the ADA.

Defendants contend that plaintiff's disability discrimination claim must be dismissed because (1) plaintiff has not plausibly alleged an intent to return to Spirit Halloween, as is

required to show standing in the ADA context; and (2) regardless, plaintiff fails to state a substantive disability discrimination claim under Title III of the ADA.  Defs.' Mem. at 10–14.

"Title III of the ADA provides that '[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation.'"  *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008) (quoting 42 U.S.C. § 12182(a)).  Importantly, however, "Title III . . . authorizes private actions only for injunctive relief, not monetary damages."  *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012).

## 1.  Standing

The Court addresses standing first because it has jurisdictional implications.  *See Ex parte McCardle,* 74 U.S. 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

To demonstrate standing in the context of a motion to dismiss, a plaintiff must plausibly allege "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 414 (2021)).

As noted *supra*, "Title III . . . authorizes private actions only for injunctive relief, not monetary damages."  *Krist*, 688 F.3d at 94.  Consequently, "[a] plaintiff pursuing injunctive relief may not rely solely on past injury, but also must establish that 'she is likely to be harmed again in the future in a similar way.'"  *Calcano v. Swarovski N.A. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016)).

Measured against this general legal standard, plaintiff has failed to plausibly allege Article III standing for purposes of her ADA claim.

"Courts in this Circuit have recognized that the Second Circuit's recent *Calcano* decision 'raised the bar appreciably for adequately pleading standing . . . in ADA cases.'" *Tavarez v. Moo Organic Chocolates, LLC*, 641 F. Supp. 3d 76, 81 (S.D.N.Y. 2022) (quoting *Hennessy by & through Hennessy v. Poetica Coffee Inc.*, No. 21-CV-5063 (KAM) (RML), 2022 WL 4095557, at *4 (E.D.N.Y. Sept. 7, 2022) (collecting cases)).

In *Calcano*, the Second Circuit held that,

> in the ADA context . . . [a] plaintiff seeking injunctive relief has suffered an injury in fact when "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [public accomodation] to plaintiff's home, that plaintiff intended to return to the subject location."

*Id.* at 74 (quoting *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013) (citing *Camarillo,* 518 F.3d at 158).

As the panel explained, "[t]hese considerations may assist courts in determining whether an alleged prospective injury is sufficiently 'concrete and particularized.'" *Calcano*, 36 F.4th at 74 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Defendants argue that the complaint "fails to satisfy any of the required elements needed to assert standing." Defs.' Mem. at 10. The Court agrees.

First, as discussed at length in the following section, plaintiff has not alleged that T.W. suffered a past injury under the ADA. *See infra* Point IV.B.2.

Second, because plaintiff has not plausibly alleged any past discrimination, it cannot be reasonably inferred that defendants would continue to discriminate against T.W.

13

Third, and most notably, the complaint lacks any allegation that T.W. intended to return to Spirit Halloween. *See, generally,* Compl.

"In particular, the focus of the third factor—*i.e.*, intent to return based on past visits and proximity—is to ensure that 'the risk of harm is sufficiently imminent and substantial' to establish standing." *Calcano*, 36 F.4th at 68 (quoting *TransUnion LLC*, 594 U.S. at 435). "[A]n ADA plaintiff has suffered an injury in fact when, among other things, 'it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [businesses] to plaintiff's home, that plaintiff intended to return to the subject location.'" *Calcano*, 36 F.4th at 71–72 (quoting *Kreisler*, 731 F.3d at 188).

"[C]onclusory allegations of intent to return and proximity are not enough—in order to 'satisfy the concrete-harm requirement' and to 'pursue forward-looking, injunctive relief,' Plaintiffs must establish a 'material risk of future harm' that is 'sufficiently imminent and substantial.'" *Calcano*, 36 F.4th at 72 (quoting *TransUnion LLC*, 594 U.S. at 435); *see Harty v. W. Point Realty, Inc.*, 477 F. Supp. 3d 163, 168 (S.D.N.Y. 2020) ("Such threat of future injury must be 'real and immediate,' as opposed to 'merely conjectural or hypothetical.'" (quoting *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 675 F. Supp. 2d 376, 382 (S.D.N.Y. 2009)), *aff'd*, 28 F.4th 435 (2d Cir. 2022).

For example, in *Calcano*, the Second Circuit affirmed the pre-answer dismissal of a complaint that "fail[ed] to provide *any* details about past visits or the frequency of such visits," did "not specify which stores they visited or what items they purchased," and "offered only 'naked assertions' of intent to return to Defendants' stores." *Calcano*, 36 F.4th at 76–77 (emphasis in original).

Comparatively, here, plaintiff pleads much less.  First, the complaint lacks even a *conclusory* allegation concerning the proximity of Spirit Halloween to plaintiff's home.  *See, generally,* Compl.  Second, plaintiff alleges only that "[s]uch a violation of T.W.'s right. . . occurred upon. . . Defendants [*sic*] blanket prohibition that T.W., her mother, and her grandmother were thereafter prohibited from frequenting Defendants' stores."  Compl. ¶ 52. This legal conclusion is unsupported by any factual allegations and does not otherwise demonstrate an intent to return such that the threat of injury is real or imminent.

Notably, plaintiff concedes "that the above allegations were absent from . . . [her] initial complaint. . ."  Pl.'s Opp. at 18.

In all, plaintiff has not plausibly alleged that T.W. has standing to bring her disability discrimination claim pursuant to Title III of the ADA.

Accordingly, Count II is dismissed for lack of jurisdiction.

### 2. Failure to State a Claim

Even had plaintiff plausibly alleged standing, defendants seek dismissal of Count II nonetheless, for failure to state a claim upon which relief can be granted.  Defs.' Mem. at 12. They argue that plaintiff has not sufficiently alleged that defendants discriminated against T.W. on the basis of her disability, as is required to obtain relief under Title III of the ADA.  *Id.* at 12–14.

"To state a claim under Title III, [plaintiff] must allege (1) that [T.S] is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against [T.W] by denying her a full and equal opportunity to enjoy the services defendants provide."  *Camarillo*, 518 F.3d at 156.

Plaintiff satisfies the first two elements.  Compl. ¶¶ 49, 51 ("Plaintiff, T.W., as an individual with autism is a person with a disability within the meaning of 42 U.S.C. § 12102 . . . Defendant Spirit Halloween Superstores owns and operates a 'place of public accommodation' as defined in 42 U.S.C. § 12181(7) and 2 8 C.F.R. § 36.104 . . .").

However, as defendants correctly argue, plaintiff has not plausibly alleged that defendants denied T.W. a full and equal opportunity to enjoy their services.  *See* Defs.' Mem. at 12–14.

Specifically, plaintiff alleges that defendants denied T.W. full and equal enjoyment of their services by (1) "ignoring Plaintiff Kayman's pleas" to accommodate T.W. "by refraining from reflexively assuming a strong-armed, accusatory tone and posture when alleging and charging T.W. with shoplifting," (2) engaging "in mocking and ridicule," and (3) prohibiting T.W., Kayman, and T.W.'s grandmother from returning to Spirit Halloween.  Compl. ¶ 52.

The first two assertions allege, at most, that defendants were insensitive.  However, "the ADA . . . should not be considered to 'regulate individuals' conduct so as to ensure they will never be rude or insensitive to persons with disabilities.'"  *Storonsky v. Nat'l R.R. Passenger Corp.*, 2023 WL 3901693, at *8 (W.D.N.Y. June 8, 2023) (quoting *Camarillo*, 518 F.3d at 157).

Moreover, each of these allegations relates to conduct which occurred *after* plaintiff voluntarily "decided to immediately discontinue their shopping and leave the store."  Compl. ¶ 24.  Thus, it cannot be fairly alleged that *defendants'* conduct denied T.W. access to, or enjoyment of, the "services" offered at Spirit Halloween.

The Employee defendants' alleged conduct while Kayman and T.W. were inside the store similarly fails to support a claim of disability discrimination.  The complaint lacks any plausible, non-conclusory allegation that defendants impeded T.W.'s access to or enjoyment of Spirit

Halloween.  Although plaintiff does allege that T.W. was "excessively stimulated by all the Halloween sights and sounds," she does not also allege that this is the reason plaintiff decided to leave the store.  Compl. ¶ 24.  Moreover, there is no indication that Kayman ever requested any accommodation on account of the allegedly overstimulating displays.

No iteration of these allegations would suffice to state a plausible disability discrimination claim pursuant to 42 U.S.C. § 12182.

### C.  42 U.S.C. § 1981, 42 U.S.C. § 12182 & 28 C.F.R § 36.102: RACE AND DISABILITY INTERSECTIONALITY CLAIM

Plaintiff characterizes Count III of her complaint as "an intersectionality claim."  Compl. ¶ 56.  According to the plaintiff, "[a] plaintiff states an intersectional discrimination claim when he or she alleges discrimination on the basis of two protected characteristics (such as race and disability) . . . and shows that the discrimination. . . is attributable, at least in part, to the combination of those protected characteristics."  *Id.* 57.

Although the Second Circuit has "recognize[d] that, 'where two bases of discrimination exist, the two grounds cannot be neatly reduced to distinct components,'" *see Bockus v. Maple Pro, Inc.*, 850 F. App'x 48, 52 (2d Cir. 2021) (summary order) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 109–10 (2d Cir. 2010)), there is no indication that the Second Circuit has ever recognized a standalone cause of action premised on "intersectionality."

In any event, consideration of her racial disability claim "in concert with" her disability discrimination claim "does not render h[er] desired inference of unlawful discrimination from h[er] conclusory allegations any more plausible."  *Bockus*, 850 F. App'x at 52.

As discussed *supra*, plaintiff has not plausibly alleged that defendants discriminated against T.W. on the basis of race *or* disability, necessarily defeating any derivative claim premised on either theory.

### D. N.Y.S. EXC. LAW § 291: DISCRIMINATION, HARASSMENT, AND HOSTILE WORK ENVIRONMENT

Defendants argue that "should this Court elect to dismiss Plaintiffs' federal disability and race discrimination and harassment claims . . . it should decline to exercise supplemental jurisdiction over any related NYSHRL claims." Defs.' Mem. at 17.

Ordinarily, federal courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a).

This "case or controversy" requirement is satisfied where state and federal claims "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). "[O]nce it is determined that a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy, supplemental jurisdiction over the related claim is mandatory." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (citation omitted).

Even so, a federal court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *see also Klaper v. Cypress Hills Cemetery*, 593 F. App'x 89, 90 (2d Cir. 2015) (summary order) ("As to [plaintiff]'s claim that the district court erred in declining to exercise supplemental jurisdiction over his NYSHRL and NYCHRL claims, the district court was under no obligation to do so.").

After considering the matter, the Court declines to exercise supplemental jurisdiction over plaintiff's New York State Human Rights Law claims. As discussed above, all of plaintiff's federal claims must be dismissed. Under such circumstances, courts typically decline to exercise supplemental jurisdiction over any related state-law claims. *Walker v. Time Life Films, Inc.*, 784

F.2d 44, 53 (2d Cir. 1986) (endorsing this approach absent "exceptional circumstances").  There

are no exceptional circumstances presented here.

Accordingly, plaintiff's state-law claims will be dismissed without prejudice.

**E.  Leave to Amend**

As a final matter, the Court must address whether plaintiff should be given leave to

amend her complaint.

Plaintiff's request is found only in footnotes.  Pl.'s Opp. at 8 n. 1, 12 n. 2.  Under this

district's Local Rules of Practice, "[a] party moving to amend a pleading . . . must attach an

unsigned copy of the proposed amended pleading to its motion papers."  L.R. 15.1(a).  "[T]he

proposed amended pleading must be a complete pleading, which will supersede the pleading

sought to be amended in all respects."  *Id.*  "A party shall not incorporate any portion of its prior

pleading or exhibits thereto into the proposed amended pleading by reference."  *Id.*  "The motion

must set forth specifically the proposed insertions and deletions of language and identify the

amendments in the proposed pleading."  *Id.*

Plaintiff has failed to comply with this Local Rule.  Her failure to attach a proposed

amended pleading is particularly frustrating, "as it precludes the Court from 'examin[ing] the

exact amendment that it is being asked to permit[;] ... ensur[ing] that all of the allegations

asserted . . . are contained in a single document[;] ... [and] eliminat[ing] the confusing nature of

piecemeal amended pleadings.'"  *Wynn v. Lee*, 2019 WL 13546213, at *1 (N.D.N.Y. May 1,

2019) (quoting *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 508 (N.D.N.Y. 2009)).

Plaintiff's obvious non-compliance with the Local Rules of Practice is a sufficient basis

on which to deny her motion to amend.  *See, e.g.*, *Braxton v. Bell*, 2020 WL 13908846, at *1

(N.D.N.Y. July 7, 2020) ("[T]he Court is nonetheless compelled to deny Plaintiff's motion to

amend for failure to comply with the Local Rules for the Northern District of New York and

Federal Rules of Civil Procedure."); *Jimico Enters., Inc. v. Lehigh Gas Corp.*, 2010 WL 11541935, at *2 (N.D.N.Y. Nov. 29, 2010) ("[T]he Court denies Defendant's motion for failure to comply with the Local Rules of this Court.").

"Even if the Court ignored Defendant's blatant violation of the Local Rules, it would deny the Motion to Amend as futile." *H&R Block Tax Servs., LLC v. Strauss*, 2017 WL 395119, at *9 (N.D.N.Y. Jan. 27, 2017). "It is well-established that '[o]ne good reason to deny leave to amend is when such leave would be futile,' specifically when 'the additional information d[oes] not cure the complaint.'" *Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany*, 615 F.3d 97, 114 (2d Cir. 2010) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 55 (2d Cir.1995)).

As noted *supra*, plaintiff has not submitted an unsigned copy of her proposed amended pleading. Instead, plaintiff has attached "Kayman's Affidavit herein in order provide [*sic*] a full and complete narration of the operative facts which they will duly assert in an Amended complaint." Pl.'s Opp. at 8.

Kayman raises the following new allegations in her opposition papers, presumably in an effort to revive T.W.'s disability discrimination claim: (1) Kayman has gone to Spirit Halloween almost annually since 2016; (2) Spirit Halloween is near other stores Kayman frequents; (3) she and T.W. live eleven minutes from Spirit Halloween; (4) she and T.W. visited Spirit Halloween two years prior, in 2020, and were similarly discriminated against; and (5) she visited Spirit Halloween in 2023 *without T.W.* and observed discrimination against other individuals with disabilities. Pl.'s Opp. at 14–16.

These new allegations do not cure the deficiencies in her complaint. Taken as true, plaintiff now alleges that T.W. visited Spirit Halloween just once prior to 2022. Plaintiff does not allege

that T.W. has a concrete and immediate intent to return to Spirit Halloween in the future, given that Kayman and her sister were "determined not to patronize" Spirit Halloween after "having received such disrespect and discrimination." Kayman Aff. ¶ 17.

Further, any allegations pertaining solely to Kayman are irrelevant. She is not alleged to have a disability, so *her* visits to Spirit Halloween without T.W. have no bearing on T.W.'s standing under the ADA. The fact that Kayman visited Spirit Halloween in 2023 while working as an aide for adults with disabilities is similarly irrelevant because it involved a different location and T.W. was not present. Kayman Aff. ¶ 17.

In sum, Kayman's affidavit does not plausibly allege that T.W. has standing under the ADA.

Even if plaintiff had sufficiently pleaded ADA standing, plaintiff has not stated a plausible disability discrimination claim on the merits. None of plaintiff's newly alleged facts remedy her failure to demonstrate that T.W. was denied access to Spirit Halloween's goods or services on the basis of her disability. In fact, plaintiff doubles down on her prior assertion that Kayman, herself, decided to leave Spirit Halloween without making a purchase due to the alleged racial discrimination. Kayman Aff. ¶ 17.

Plaintiff has not stated facts which, taken as true, state any plausible claim for relief. Thus, the Court denies plaintiff's motion for leave to amend.

## V.    CONCLUSION

Plaintiff's claims for racial discrimination, pursuant to 42 U.S.C. § 1981, and disability discrimination, pursuant to 42 U.S.C. § 12182, are dismissed. Plaintiff's request for leave to amend her complaint is denied for failure to comply with the Local Rules and because her proposed amendments would be futile. Because plaintiff's federal claims must be dismissed

21

without leave to amend, the Court declines to exercise supplemental jurisdiction over her state-law claims.

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss (Dkt. No. 9) is **GRANTED**;

2. Plaintiff's claims under § 1981 and Title III of the ADA are DISMISSED with prejudice; and

3. Plaintiff's state-law claims are DISMISSED without prejudice.

The Clerk of the Court is directed to terminate the pending motion, enter a judgment accordingly, and close the case.

**IT IS SO ORDERED.**

Anthony J. Brindisi
U.S. District Judge

Dated:  July 11, 2025
         Utica, New York.

22